MODIFIED OPINION[1]

No. 117,128

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TRAVELERS CASUALTY INSURANCE,
*Appellant*,

v.

LARRY G. KARNS, Director, KANSAS DIVISION OF WORKERS COMPENSATION,
and ONEBEACON AMERICAN INSURANCE COMPANY,
*Appellees*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 2017 Supp. 44-556(e), the director of workers compensation does not have the authority to make findings of fact and conclusions of law or to enter orders of reimbursement based on such findings and conclusions. The Workers Compensation Board must decide substantive disputes over reimbursement of benefits with sufficient particularity that the director can then certify the amount to be reimbursed and the party to make the reimbursement. The director's certification is a ministerial function devoid of discretionary decision-making.

2.

Agency actions taken by the director of workers compensation are subject to review under the Kansas Judicial Review Act.

---

[1]**REPORTER'S NOTE:** Opinion No. 117,128 was modified by the Court of Appeals on October 5, 2018, after Appellant filed a motion for rehearing or modification.

Appeal from Shawnee District Court; FRANKLIN R. THEIS, judge. Original opinion filed August 24, 2018. Modified opinion filed October 5, 2018. Reversed and remanded to the Workers Compensation Board with directions.

*William L. Townsley III*, and *Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant.

*Glenn Griffeth*, of Kansas Department of Labor, for appellee Larry G. Karns.

*Kip A. Kubin*, of Bottaro, Kubin & Yocum, P.C., of Leawood, for appellee OneBeacon American Insurance Company.

Before ATCHESON, P.J., PIERRON and STANDRIDGE, JJ.[*]

[*] This modified opinion supersedes and replaces the one released August 24, 2018. Travelers Casualty Insurance timely filed a motion for rehearing or modification of the original opinion. The other parties filed no responses to the motion. The panel has revised the opinion in response to some of the points Travelers raised and has declined to do so as to other points. The panel has concluded rehearing is unnecessary.

ATCHESON, J.: Regular participants in government bureaucracies sometimes adopt informalities that commonly reduce the friction those processes would generate if they functioned strictly as designed. The expedients mostly work unless they run up against an eccentric situation or until someone calls attention to the actual design. We appear to face some combination of those circumstances in assessing how the Kansas Workers Compensation Act realigns financial responsibility among insurance companies when one insurer has paid benefits to an injured worker that should have been paid by another insurer. The workers compensation director and the Shawnee County District Court unsatisfactorily attempted to sort out that kind of reimbursement dispute between Travelers Casualty Insurance and OneBeacon American Insurance Company. Given the procedural posture of the case, we reverse the district court and remand to the Workers

Compensation Board with directions to apply the statutory procedures as designed to address OneBeacon's claim for reimbursement.

In short, we do not resolve the claim. We hand it off to the Board for resolution—where it should have been considered in the first place. In doing so, we find Workers Compensation Director Larry G. Karns overstepped his statutory authority by making findings of fact and conclusions of law and issuing an order directing Travelers to reimburse OneBeacon. The Board is statutorily charged with making those findings and conclusions, and the director then simply carries out the Board's substantive determination by certifying who is to reimburse whom and the precise amount of the payment.

FACTUAL AND PROCEDURAL HISTORY OF REIMBURSEMENT DISPUTE

The who-owes-what issue we have before us arises out of multiple workers compensation claims a legal secretary filed for repetitive use injuries that spanned years, two employers, and several insurance carriers providing coverage to those employers. The details of the underlying injury claims are largely irrelevant to our disposition of the remaining legal dispute. Nobody now contests the benefits the legal secretary received.

OneBeacon paid almost $152,000 in preliminary medical benefits to the legal secretary after March 1, 2005. This court affirmed the Board's decision the legal secretary suffered two compensable workers compensation accidents but remanded for a determination whether those accidents constituted distinct injuries or a single injury and, in turn, a calculation of the appropriate benefits. *Barker v. Grace, Unruh & Pratt*, No. 108,223, 2013 WL 5187413 (Kan. App. 2013) (unpublished opinion). The Board ruled the legal secretary suffered two injuries and awarded her a maximum disability benefit of $100,000 on each. The Board, however, did not address who was responsible for paying the preliminary medical benefits in light of the legally distinct accidents and injuries.

3

A worker's successive repetitive use claims present particular challenges in determining benefits because the physiological disability develops over time and may recur despite treatment. So there may be disputes about whether the worker suffered multiple accidents or recurrent disabilities attributable to a continuing accident and the date of the accident or accidents. The Workers Compensation Act relies on certain statutory rules to guide those determinations in repetitive use claims. Here, the finding that the legal secretary suffered distinct accidents potentially affected which of the insurance carriers bore responsibility for the disputed medical benefits and in what amounts. And, in some cases, that may require one carrier to reimburse another carrier for benefits it had paid during the adjudication of the workers compensation claim.

As we explain, K.S.A. 2017 Supp. 44-556(e) requires the Board to make any reimbursement determination in the first instance with sufficient particularity that the workers compensation director can then "certify" the amounts to be reimbursed to the responsible parties. But that's not what happened here. We do not presume to make a substantive determination on reimbursement in this appeal, much as the parties might want us to. Rather, the Board should do so. This case, therefore, needs to be returned to the Board for that limited purpose. We do, however, endeavor to outline what the parties did procedurally in this case and then examine what they should have done. Our exercise lays out what the governing statutes require in these situations and, thus, the procedure that should be followed.

Here, after the Board's ruling on remand, OneBeacon wrote a letter to Director Karns explaining that based on the distinct accidents, it should not have been responsible for the preliminary medical benefits and that it was entitled to reimbursement. OneBeacon identified the Workers Compensation Fund as the likely source for the reimbursement. Karns invited additional written submissions from the two insurance carriers. Travelers argued to Karns and has repeated on appeal that the Fund is

4

responsible for any reimbursement due OneBeacon and relies on K.S.A. 2017 Supp. 44-534a(b) as supporting statutory authority. As we have said, for purposes of this appeal, we put to one side the substantive arguments on reimbursement, since the Board should have first crack at evaluating them. The Board has not had that opportunity, since those arguments were initially presented to Karns after he received OneBeacon's letter.[1]

[1] Despite the arguments that the Fund should be liable for the reimbursement, the Fund has never been joined as a party in the workers compensation proceeding, violating the clear directive in K.S.A. 2017 Supp. 44-566a(c)(1). The statute, in part, states: "Whenever the workers compensation fund may be made liable for the payment of any amounts in proceedings under the workers compensation act, the commissioner of insurance, in the capacity of administrator of such fund, shall be impleaded in such proceedings and shall represent and defend the workers compensation fund."

The failure to implead the Fund also calls into question Travelers' argument that the Fund should be liable based on the administrative law judge's original award. The ALJ ruled that if an insurance carrier had paid preliminary benefits to the legal secretary outside its coverage date, the Fund should reimburse the carrier. The ALJ cited no authority for that briefly stated conclusion. More importantly, the ruling at least contingently imposed liability on the Fund without having impleaded the Fund as required under K.S.A. 2017 Supp. 44-566a(c)(1). The insurance carriers had no incentive to question that aspect of the award in later proceedings before the Board or this court. Nor did the legal secretary. Because the Fund was never impleaded, it had no opportunity to be heard. It still hasn't. Commonly, of course, persons and entities cannot be bound by judgments in proceedings to which they are not parties. See *Shutts, Executor v. Phillips Petroleum Co.*, 222 Kan. 527, 543, 567 P.2d 1292 (1977).

Karns considered the submissions from OneBeacon and Travelers and then issued a five-page document titled as an "order denying certification" that included findings of fact and conclusions of law. The self-described order ultimately directed Travelers to reimburse OneBeacon for the full amount of the preliminary medical benefits, citing K.S.A. 2017 Supp. 44-556(e) as the controlling statute. In rejecting Travelers' arguments, Karns necessarily made a deliberative legal decision as to which statute governed the reimbursement.

5

Travelers filed a petition in the district court challenging Karns' decision as an appealable agency action under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., and alternatively seeking an order of prohibition negating the reimbursement. In a lengthy written ruling, the district court held Travelers could not obtain judicial review of the reimbursement ruling through the KJRA and that neither prohibition nor mandamus, as extraordinary remedies, would be appropriate to challenge Karns' order. The district court's ruling effectively left Karns' order undisturbed without explicitly endorsing its substantive conclusion on reimbursement. Travelers has appealed the district court's decision, and that's what we have before us.

LEGAL ANALYSIS

We begin with what we see as the proper procedural course for handling the reimbursement of undisputed workers compensation payments among employers, insurance carriers, and the Fund. Because that course was not followed in this case, we remand to the Board for that purpose. After that explanation, we double back to address why the district court's resolution missed the mark.

This exercise principally entails statutory interpretation and, therefore, presents a question of law. See *State v. Murdock*, 299 Kan. 312, 314, 323 P.3d 846 (2014) (interpretation of statute a question of law given unlimited review on appeal). To the extent there is a factual overlay, the material facts are undisputed, so the outcome remains a legal determination we consider without deference to the district court. See *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011).

In construing a comprehensive statutory scheme such as the Workers Compensation Act, an appellate court must, as a first priority, strive to honor the legislative intent and purpose. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). The court should look initially to the words of a statute to discern legislative

6

intent. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 725-26, 317 P.3d 70 (2014). If particular language is open to more than one reasonable interpretation, a court may consider the overall statutory purpose and favor a reading that comes to a "consistent, harmonious, and sensible" result effectuating that purpose. *In re Marriage of Traster*, 301 Kan. at 98. Judicial interpretation should avoid adding something to the statutory language or negating something already there. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007). A court, of course, may also deploy those analytical tools to debunk a suggested interpretation of a statute as improbable, particularly when the suggestion would undermine a legislative purpose. See *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015) (court should construe statute "to avoid unreasonable or absurd results").

*Reimbursement Issues Under the Workers Compensation Act*

The Workers Compensation Act is an intricate statutory scheme detailing substantive and procedural rules for determining and distributing benefits to persons injured on the job and assessing financial responsibility for those benefits. As part of that scheme, the Workers Compensation Act specifically addresses the situation in which an entity, here OneBeacon, believes it has paid benefits that, although indisputably due an injured worker, should have been paid by another entity, here Travelers. K.S.A. 2017 Supp. 44-556(e). The entities may be an insurance carrier covering an employer for workers compensation losses, a self-insured employer, or the state's Fund.

We focus on K.S.A. 2017 Supp. 44-556(e), since Karns relied on that provision and the reimbursement dispute here does not concern disallowed benefits. Similar reimbursement and certification procedures are outlined in K.S.A. 2017 Supp. 44-534a(b) and K.S.A. 2017 Supp. 44-556(d), when benefits received by an injured worker are later disallowed. As we have indicated, Travelers has fashioned a substantive argument that K.S.A. 2017 Supp. 44-534a(b) governs and imposes responsibility for reimbursement on

7

the Fund. And as we have also indicated, the Fund must be impleaded, as provided in K.S.A. 2017 Supp. 44-566a(c)(1), if it may be responsible for reimbursing benefits. See n.1.

In K.S.A. 2017 Supp. 44-556(e), the Legislature has provided that when an entity pays benefits to an injured worker during the pendency of a claim and an administrative law judge, the Board, or an appellate court later finds another entity to have been liable for those benefits, the entity that paid is entitled to reimbursement from the responsible entity. The procedural mechanism calls for the decision-maker—be it an ALJ, the Board, or a court on judicial review—to identify with particularity the benefits and the entity actually responsible for their payment. K.S.A. 2017 Supp. 44-556(e). After a definitive ruling has been entered, the director, here Karns, is to "determine the amount" to be reimbursed "in accordance with the final decision on the appeal or review" and then is to "certify [the] amount to be reimbursed" and the party obligated to make the reimbursement. K.S.A. 2017 Supp. 44-556(e). Upon receipt of the director's certification, the entity owing benefits is required to pay the party to be reimbursed. K.S.A. 2017 Supp. 44-556(e).[2]

> [2] In its entirety, K.S.A. 2017 Supp. 44-556(e) provides:
>
> "If compensation, including medical benefits, temporary total disability benefits or vocational rehabilitation benefits, has been paid to the worker by the employer, the employer's insurance carrier or the workers compensation fund during the pendency of review under this section, and pursuant to K.S.A. 44-534a or K.S.A. 44-551, and amendments thereto, and the employer, the employer's insurance carrier or the workers compensation fund, which was held liable for and ordered to pay all or part of the amount of compensation awarded by the administrative law judge or board, is held not liable by the final decision on review by either the board or an appellate court for the compensation paid or is held liable on such appeal or review to pay an amount of compensation which is less than the amount paid pursuant to the award, then the employer, employer's insurance carrier or workers compensation fund shall be reimbursed by the party or parties which were held liable on such review to pay the amount of compensation to the worker that was erroneously ordered paid. The director shall determine the amount of compensation which is to be reimbursed to each party under this subsection, if any, in accordance with the final decision on the appeal or review and shall certify each such amount to be reimbursed to the party required to pay the amount or amounts of such reimbursement. Upon receipt of such certification, the

8

party required to make the reimbursement shall pay the amount or amounts required to be paid in accordance with such certification. No worker shall be required to make reimbursement under this subsection or subsection (d)."

The statutory mechanism requires the decision-making authority to detail the benefits that have been incorrectly paid by one entity and to identify the entity actually responsible for them. In turn, the director can then *certify* the exact amount to be reimbursed by whom and to whom. The process intends the certification and the resulting payment to be rote exercises rather than ones subject to further challenge and review. As we explain, challenges to reimbursements are to be lodged with the appropriate decision-making authority before the director's certification.

The statutorily described procedures channel the substantive determinations to ALJs, the Board, and the appellate courts, where they obviously belong. Here, for example, the legal secretary's claim involved recurrent repetitive use injuries over an extended period. Given the nature of those injuries, the rules governing them for workers compensation benefits are both arcane and, to some extent, fictive. They are to be construed and applied through adjudicative proceedings, not by a single agency official after that adjudication has concluded. The Legislature's use of the words "certify" to describe the director's undertaking and "certification" to describe the result of that undertaking highlights the ministerial character of that part of a statutory reimbursement. To "certify" commonly means to "confirm" or to "attest as being true." Merriam-Webster Collegiate Dictionary 203 (11th ed. 2003); see also Webster's New World Collegiate Dictionary 245 (5th ed. 2016) ("certify" means "to declare . . . true, accurate, certain, etc. by formal statement"). Certification, then, does not entail the disposition of factual discrepancies or legal disputes, as would resolution or adjudication. It is simply the declaration or attestation of the result of the actual disposition.

By the time the director certifies a reimbursement under K.S.A. 2017 Supp. 44-556(e) all of the discrepancies and disputes should have been resolved. Not to put too fine

9

a point on it, the director is supposed to act as a functionary without adjudicative or discretionary authority in issuing a certification. And neither the reimbursing party nor the party reimbursed should have any legal basis to challenge the certification itself. In short, the certification should be treated like an invoice to pay an undisputed debt.

But that's not what happened here. After this court remanded the case, the Board found the legal secretary suffered two injuries for workers compensation purposes. But the Board did not address the legal effect that determination had on who was obligated to pay for medical treatment the legal secretary required during the adjudication of her claim. OneBeacon paid those amounts but contended the Fund or (possibly) Travelers should have been responsible if the legal secretary's claim represented a new injury rather than a continuation or aggravation of a previous injury.

As we indicated, OneBeacon requested reimbursement in a letter to Director Karns, and Karns then invited "comments" from both OneBeacon and Travelers as to who bore responsibility for the benefits and on his tentative conclusion Travelers likely was responsible. In its comments, OneBeacon explained that either Travelers or the Fund could be required to pay. Travelers argued OneBeacon remained responsible or, alternatively, the Fund was obligated.

We have inferred from the parties' briefs on appeal and more directly from the lawyers' responses to questions at oral argument that reimbursement issues under K.S.A. 2017 Supp. 44-556(e) are often raised through a letter to the director, who then steps in and decides them. This seems to be one of those procedural bypasses a specialized agency and regular practitioners before that agency have developed to promote efficiency notwithstanding a different—and arguably more cumbersome—statutory process. Here, the insurance carriers both submitted the Fund might be liable for any reimbursement, even though the Fund had never been made a party to the workers compensation

10

proceedings. But each insurance carrier also offered a rationale that would make the other responsible for the benefits.

Against the backdrop of those dueling legal arguments, Karns issued a five-page order, denominated as such, finding Travelers responsible for the medical expenses that OneBeacon had paid. The order contains factual findings and legal conclusions, including that K.S.A. 2017 Supp. 44-556(e) governs the reimbursement. Based on those findings and conclusions, Karns stated, "[I]t is appropriate to apply that statute's provisions and order reimbursement from Travelers to OneBeacon in the sum of $151,782.59." The order, then, exceeded the scope of a certification and usurped the role of the Board as a decision-maker under both the Workers Compensation Act generally and K.S.A. 2017 Supp. 44-556(e) specifically. Confronted with this legal dispute, we cannot endorse the informal bypass of the Board's statutorily established adjudicative authority in favor of the director's unauthorized decision-making masquerading as a pro forma certification.

To that extent, we find Travelers' appeal to be well-taken. We fashion a remedy returning the issue to the Board for consideration consistent with the provisions of the Workers Compensation Act governing reimbursements, the law applicable to repetitive use injuries, and the earlier findings in this case regarding the legal secretary's multiple injuries and accidents. See K.S.A. 77-622(b) (Under the KJRA, a court may remand to the agency "for further proceedings."). We express no opinion whether, on remand, reimbursement to OneBeacon is now appropriate either procedurally or substantively. The Board initially needs to make those determinations. Assuming the Board goes forward and Travelers or OneBeacon continues to argue the Fund may be liable, we suppose the Fund should be made a party consistent with K.S.A. 2017 Supp. 44-566a(c)(1). If the Board finds OneBeacon to be entitled to reimbursement, it should render sufficiently specific determinations that the director can then issue the sort of ministerial certification contemplated in K.S.A. 2017 Supp. 44-556(e) and the other reimbursement statutes.

*District Court's Treatment of Travelers' Petition*

We return to the district court's determination rejecting Travelers' petition both under the KJRA and as an original action for an order of prohibition. We first examine the KJRA and then look more briefly at Travelers' requested relief grounded in prohibition.

Karns' reimbursement order was in form, content, and ostensible result an "agency action" that could be challenged in the district court. K.S.A. 77-602(b)(1) ("agency action" includes "[t]he whole or a part of . . . an order"); K.S.A. 2017 Supp. 77-621 (scope of judicial review of agency actions). The order would have been vulnerable under several of the grounds in K.S.A. 2017 Supp. 77-621(c) because Karns engaged in unauthorized decision-making rather than entering a ministerial certification of reimbursement. See K.S.A. 2017 Supp. 77-621(c)(4) (agency erroneous applied law); (c)(5) (agency failed to follow prescribed procedures); (c)(6) (person taking action improperly exercised authority of decision-making body). The KJRA contemplates judicial review of determinations denominated as orders that facially satisfy the definition of an agency action but are invalid because the issuing officer exceeded his or her delegated authority. In other words, the KJRA permits a challenge to an agency action that isn't an action at all because the agency lacked the legal authority to do what it did.

The district court viewed Karns' decision and order as ministerial and, thus, as something less than an agency action appealable under the KJRA. But we think that conclusion falters. Karns did not merely implement specific findings and conclusions of a decision-maker; he reached his own findings and legal determinations on reimbursement. As such, the resulting order ostensibly operated as an agency action, making it reviewable. At the same time, however, the order exceeded Karns' legal authority under K.S.A. 2017 Supp. 44-556(e), rendering it erroneous and, thus, invalid for that reason.

12

The district court also cited *Cincinnati Insurance Co. v. Karns*, 52 Kan. App. 2d 846, 379 P.3d 399 (2016), without much elaboration, as supporting its determination that Travelers' challenge to Karns' order could not be brought under the KJRA. The district court was obligated to adhere to the *Cincinnati Insurance* opinion as a published appellate decision. And the opinion does seem to establish a rule precluding review under the KJRA of anything the director does. We disagree with that broad rule. Unlike the district court, we are not bound by an earlier published opinion from another panel. See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010) (opinion from one panel of the Court of Appeals does not bind later panels); *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012).

The *Cincinnati Insurance* opinion appears to read K.S.A. 2017 Supp. 44-556(a) as providing the exclusive statutory vehicle for judicial review of agency decisions arising under the Workers Compensation Act, thereby limiting application of the KJRA to Board determinations and precluding any review of the director's actions. *Cincinnati Insurance*, 52 Kan. App. 2d at 849. In pertinent part, that subsection states: "Any action of the board pursuant to the workers compensation act . . . shall be subject to review in accordance with the Kansas judicial review act by appeal directly to the court of appeals." K.S.A. 2017 Supp. 44-556(a). We think *Cincinnati Insurance* misconstrues K.S.A. 2017 Supp. 44-556(a) and imputes a nonsensical intent to the Legislature to hand the director an impervious shield to KJRA review.

Standing alone, K.S.A. 2017 Supp. 44-556(a) simply directs that judicial review of a Board decision begin in this court, bypassing the district court, and is to be governed by the KJRA in all other respects. But the *Cincinnati Insurance* opinion effectively construes K.S.A. 2017 Supp. 44-556(a) to be the exclusive means of KJRA review for any agency action authorized under the Workers Compensation Act. That is, the panel necessarily found the Legislature's specific choice to require review of Board decisions in

13

the Court of Appeals rather than in the district court also included a general intent to eliminate judicial review of agency actions other than Board decisions under the KJRA. An analysis of the interplay between the KJRA and the Workers Compensation Act dispels that notion.

First, the KJRA provides that it "applies to all agencies and all . . . agency actions not specifically exempted by statute from the provisions of this act." K.S.A. 2017 Supp. 77-603(a). In turn, K.S.A. 2017 Supp. 77-603(c) lists eight specific types of agency actions *not* covered by the KJRA. None of those exemptions applies to the Workers Compensation Act. The Legislature could have included a "specific exemption" from the KJRA in K.S.A. 2017 Supp. 77-603(c) or somewhere in the Workers Compensation Act. But it has not.

In K.S.A. 2017 Supp. 44-556(a), the Legislature merely required that this court make the first review of Board decisions under the KJRA. And the Legislature separately provided that "the decisions and awards of the [B]oard shall be final" except as set out in K.S.A. 2017 Supp. 44-556. K.S.A. 2017 Supp. 44-551(p). Those statutes viewed singly or together contain no exemption from the KJRA. So as to decisions of the director that constitute agency actions under the KJRA, the default provision of K.S.A. 2017 Supp. 77-603(a) applies and affords judicial review.

Our interpretation of judicial review of agency actions under the Workers Compensation Act squares with the 1993 legislation creating the Board. Before then, assistant directors functioned as administrative law judges in hearing and deciding claims for benefits from injured workers. If an award were challenged by one of the parties, the director would review it and could alter the ALJ's decision. In turn, the director's determination constituted an agency action subject to review in the district court under the KJRA.

14

The Legislature created the Board to take over that review function from the director. The Board consists of five lawyers with developed expertise in workers compensation law. Typically, three members of the Board will review a challenged ALJ award. The Board, thus, functions like an appellate court in the sense that a panel reviews the contested points and a majority must agree on a result. The process, then, relies on input from multiple decision-makers and, thus, cultivates a certain stability and reliability that may be missing with a one-person reviewing authority. In that light, the Legislature's determination in 1993 to eliminate district court review of Board actions under the KRJA in favor of immediate review in the Court of Appeals produces a marked efficiency by sacrificing what might be considered at best a redundant layer of error correction.[3]

[3] In 1993, K.S.A. 77-603 was substantially the same as it is now with a default in favor of KJRA review and a list of agency actions exempt from review. Given that context, the Legislature in 1993 presumably would have added an exemption to K.S.A. 77-603 for the director or agency actions other than Board decisions or would have "specifically exempted" those agency actions from the KJRA with language in the Workers Compensation Act had it intended that sort of dramatic change. The language amending K.S.A. 44-556(a) to account for the creation of the Board and judicial review of its decisions falls well short of a specific exemption of all other agency actions.

Apart from reviewing compensation awards to injured workers, the director performed duties in 1993 that yielded agency actions within the meaning of the KJRA. See K.S.A. 77-602(b)(1) (reviewable agency actions include rules and regulations). We have not compiled a comprehensive inventory of the director's current duties. But, for example, the director continues to prepare and biennially update the rules and regulations establishing maximum fees for medical treatment and other services provided to injured workers. K.S.A. 2017 Supp. 44-510i(c). Those rules and regulations constitute an agency action reviewable under the KJRA, although the rationale in *Cincinnati Insurance* would preclude such review.

15

The pertinent point is that the director now and in 1993 undertook agency actions subject to the KJRA. The Legislature's fine-tuning of the KJRA review process to account for Board decisions cannot reasonably be understood as immunizing the director from any KJRA review or overriding the default application of the KJRA expressed in K.S.A. 2017 Supp. 77-603(a). The KJRA, therefore, applies to Karns' order in this case. The district court erred in ruling that it could not consider Travelers' petition under the KJRA.

We recognize the *Cincinnati Insurance* opinion dealt with a different factual situation. There, an insurance carrier failed to take an appropriate credit against a final award to an injured worker for preliminary benefits it had paid and later sought reimbursement from the Fund. Although the Workers Compensation Act allows an insurance carrier reimbursement from the Fund for benefits it has paid that are later disallowed in an adjudication of the worker's claim, there is no comparable compensatory mechanism for an insurance carrier's internal accounting error resulting in an overpayment to an injured worker. See K.S.A. 2017 Supp. 44-534a(b); K.S.A. 2017 Supp. 44-556(d). The director so informed the insurance carrier. The insurance carrier filed a petition for KJRA review of the director's denial. This court's broad conclusion that it could not consider the petition because any decision of the director is exempt from the KJRA neither follows from those factual circumstances nor conforms to the language of the KJRA and the Workers Compensation Act.

The district court in this case and the *Cincinnati Insurance* opinion both rely on the decision in *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 104 P.3d 378 (2005), for support. The decision, however, is more mirage than precedent here or for the court in *Cincinnati Insurance*.

In that case, two insurance carriers sued Paula Greathouse, as the director of workers compensation, for failing to certify reimbursements to them for benefits they

16

paid that were later disallowed to two injured workers. The insurance carriers filed original actions for mandamus in the district court rather than seeking a review of the refusal through the KJRA. Philip Harness, Greathouse's predecessor as director, neither certified reimbursement nor apparently filed a formal notice or order denying reimbursement. He wrote letters to the insurance carriers informing them they would not be repaid. Neither the parties nor the court questioned the use of mandamus. Without mentioning the KJRA, the court found mandamus to be an appropriate remedy because Greathouse and Harness failed to perform a "ministerial" function in certifying reimbursement as required by K.S.A. 44-534a. 278 Kan. at 833-34.

Typically, parties may file actions in mandamus—compelling an official to perform a required duty—or in prohibition—preventing an action falling outside an official's lawful authority—only if they have no other procedural vehicle for redressing the perceived harm. See K.S.A. 60-801 (mandamus compels performance of "a specified duty"); *Bushman Construction Co. v. Schumacher*, 187 Kan. 359, 362, 356 P.2d 869 (1960) ("writ of prohibition . . . available . . . where a public officer attempts to act beyond his legal authority"); 187 Kan. at 363 (action for prohibition properly dismissed when party had "a complete and adequate remedy in law"). The *Cincinnati Insurance* opinion surmises the court in *Schmidtlien Electric* must have silently considered and rejected KJRA review as a way of challenging actions of the director because it didn't question the use of mandamus. And the *Cincinnati Insurance* opinion cites that silence as supporting the idea the KJRA applies only to the Board and not to the director. 52 Kan. App. 2d at 850-51.

But the surmise seems faulty in at least two ways. First, the reason appellate courts issue written decisions is to explain what they have done and why. So those courts don't commonly decide legal or factual matters without mentioning them. And, in turn, appellate opinions generally should not be read as if they include unstated holdings or rationales. See *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 170, 125 S.

17

Ct. 577, 160 L. Ed. 2d 548 (2004) ("'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'") (quoting *Webster v. Fall*, 266 U.S. 507, 511, 45 S. Ct. 148, 69 L. Ed. 411 [1925]); *United States v. Mitchell*, 271 U.S. 9, 14, 46 S. Ct. 418, 70 L. Ed. 799 (1926) ("It is not to be thought that a question not raised by counsel or discussed in the opinion of the court has been decided merely because it existed in the record and might have been raised and considered."). Second, there did not appear to be an order or agency action in *Greathouse* from which to seek KJRA review. That was the problem—the director had refused to act to certify reimbursements. So there was no certification, and neither the parties nor the court appeared to attach any real legal significance to the director's explanatory letters as orders that might be construed as agency actions.[4]

[4] As we have said, K.S.A. 2017 Supp. 44-556(e) requires the Board to determine an entity's right to reimbursement for benefit payments that properly should have been made by another entity. If a director were to refuse to certify reimbursement following the Board's determination, an action in mandamus presumably would lie to compel the performance of that ministerial statutory duty. A properly issued certification, as a nondiscretionary function, would not amount to an agency action reviewable under the KJRA.

In this case, the district court also found Travelers could not bring an action for an order of prohibition to negate Karns' decision that it reimburse OneBeacon. The district court seemed to say that because Karns' order entailed a reasoned determination arguably within the authority of the director, it did not trigger a right to an extraordinary remedy. If we are correct in saying Travelers can obtain review of Karns' order under the KJRA, then Travelers had no need to resort to an action in prohibition. If, however, we are mistaken, Travelers likely could bring an action for extraordinary relief whether characterized as mandamus or prohibition to correct Karns' action in issuing an order exceeding the statutory authority granted the director in K.S.A. 2017 Supp. 44-556(e). The prohibition presumably would relieve Travelers from the obligation to comply with

18

the reimbursement order or would prevent Karns from taking steps to enforce his order in some way.

But, as the district court framed and decided the issues, the district court theoretically erred in denying the petition to the extent Travelers sought an order in prohibition as an alternative to KJRA review. Having mistakenly denied KJRA review, the district court should have entertained Travelers' request for an order in prohibition.

*Conclusion and Directions to the Board on Remand*

Karns' reimbursement order exceeds the statutory authority afforded the director in K.S.A. 2017 Supp. 44-556(e). On its face, the order is an agency action subject to review under the KJRA. Because the order oversteps Karns' authority, it is invalid at least as an erroneous application of the law and as a failure to follow prescribed procedures. See K.S.A. 2017 Supp. 77-621(c)(4), (c)(5).

We, therefore, remand the issue of the reimbursement due OneBeacon to the Workers Compensation Board for further proceedings. The Board should be guided by the following considerations:

• Should the Fund be impleaded, consistent with K.S.A. 2017 Supp. 44-566a(c)(1), given the various arguments that it might be liable for the preliminary medical benefits?

• Has OneBeacon properly presented and preserved a request for reimbursement? The Board may consider the sufficiency of OneBeacon's letter to Karns in light of what may have been the customary practice at the time, along with any other relevant circumstances bearing on proper presentation and preservation of the reimbursement claim for its review. The Board should also consider prejudice to either Travelers or the Fund in taking up the request, including prejudice to the Fund because it has never been

19

joined as a party in the administrative proceedings and, thus, could not have addressed its potential reimbursement liability.

• If OneBeacon has preserved its claim for reimbursement, the Board should consider the arguments of both insurance carriers and, presumably, the Fund as to the proper statutory mechanism for any reimbursement in light of the rules governing repetitive use injuries and the particular facts of this case.

• If the Board finds reimbursement to be warranted, it should enter a ruling with sufficient detail that the director either can certify the amount to be reimbursed and the entity obligated to make the reimbursement in conformity with the ministerial duty imposed in the governing reimbursement statute or can otherwise carry out the Board's determination consistent with the Workers Compensation Act.

• The Board may provide such other relief or make such other determinations as it finds necessary to implement this opinion in accordance with the Workers Compensation Act.

Reversed and remanded to the Workers Compensation Board with directions.